UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KEVIN PAUL SANDGREN,

              Plaintiff,

                                               Case No. 25-cv-0640-bhl

   v.

DOUGLAS COLLINS,

              Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTIONS

---

On May 1, 2025, Plaintiff Kevin Paul Sandgren, proceeding without an attorney, filed a complaint alleging that the Department of Veterans Affairs (VA), sued through its Secretary, Defendant Douglas Collins, violated federal law when it did not interview or hire him for a maintenance position at the Clement J Zablocki VA Medical Center in Milwaukee. (ECF No. 1.) On May 9, 2025, the Court screened Sandgren's complaint and allowed him to proceed with claims under Section 504 the Rehabilitation Act of 1973 and the Age Discrimination in Employment Act of 1967 (ADEA). (ECF No. 6.) The Court entered a scheduling order based on the parties' agreement to allow no discovery beyond initial disclosures and set an initial October 6, 2025 dispositive motion deadline, which it later extended to November 28, 2025. (ECF Nos. 25, 26, 34, & 36.) On November 28, 2025, Defendant filed a motion for summary judgment and supporting materials. (ECF Nos. 39–42) Sandgren responded with a number of motions and by filing miscellaneous, apparently related documents. (ECF Nos. 44, 46, 52, 53, 55 & 56.) Because the undisputed material facts defeat Sandgren's claims, Defendant's motion for summary judgment will be granted. Sandgren's assorted motions filed in response to Defendant's motion will also be denied.

## BACKGROUND[1]

Sandgren is a resident of Milwaukee, Wisconsin who has unsuccessfully applied for multiple positions at the VA. (ECF No. 41-1 at 1.) Douglas Collins is the current Secretary for the VA. (ECF No. 16 at 1.)

On December 2, 2021, the Clement J Zablocki VA Medical Center posted an open Utility-Systems Repair-Operator position on the USA Jobs website. (ECF No. 41-1 at 11–21; ECF No. 42 ¶5.) The posting indicated the position involved testing, maintaining, troubleshooting, and repairing the Medical Center's boiler plant and air conditioning systems. (ECF No. 42 ¶7.) The posting also included a "Clarification from the agency" stating "ALL U.S. CITIZENS. DIRECT HIRE AUTHORITY: This position is being filled using Direct-Hire Authority (5 CFR 337.205) for this occupation."[2] (ECF No. 41-1 at 13.)

Sandgren submitted a resume and application for the position. (ECF No. 42 ¶1.) His resume lists his experience working maintenance jobs at different employers, mostly hotels. (*Id.* ¶¶2–4.) Some of the descriptions of his former positions appear to be erroneously copied multiple times. (ECF No. 41-1 at 1–3.) Sandgren's resume includes his high school graduation year, but not a birth date. (*Id.* at 3.) Sandgren indicates he attended Universal Technical Institute in Houston, Texas where he received an "HVAC R." (*Id.*) Sandgren's resume also shows he served as a Boatswain's Mate in the Navy. (*Id.*)

On December 21, 2021, Sandgren received two emails in response to his application. (ECF No. 42 ¶*10.*) Both emails were automatically generated from "usastaffingoffice@opm.gov." (*Id.*) The first email states Sandgren was "tentatively eligible for this series/grade combination" based on his "self-rating" of his qualifications. (ECF No. 41-1 at 22.) The email further indicates Sandgren would receive notification of his referral status if his application was forwarded to the "selecting official." (*Id.*) The second email indicates Sandgren's application had been referred to

---

[1] These facts are derived from Defendant's statement of proposed facts and accompanying evidence in support of its motion for summary judgment. (ECF Nos. 41, 42, 48–50.) When a party fails to properly respond to a motion for summary judgment, the Court accepts the moving party's version of the facts as true. *Terrell v. Am. Drug Stores*, 65 Fed. Appx. 76, 77 (7th Cir. 2003); Civil L. R. 56(b)(4).

[2] The Office of Personnel Management (OPM) can give federal agencies direct hiring authority so that they may fill vacancies quickly when a critical hiring need or severe shortage of candidates exists. (ECF No. 42 ¶21; ECF No. 41-1 at 31–38.) When an agency hires pursuant to its Direct-Hiring Authority, the agency may choose which applicants, if any, it wishes to interview, and does not need to interview all qualified candidates. (ECF No. 42 ¶24.) Direct hiring authority also eliminates competitive rating and ranking, veterans' preference, and "rule of three" procedures. (ECF No. 41-1 at 34.)

the hiring manager. (*Id.* at 24.) Neither email suggests that Sandgren was selected for an interview.

Four people applied for the position, including Sandgren, but the VA ultimately interviewed and hired one of the other applicants, Peter Fehler. (ECF No. 42 ¶¶13, 29.) Fehler's resume indicated that he had relevant experience as a "Stationary/Boiler Engineer" at Advocate Aurora West Allis Hospital and worked as a "Quality Services Laboratory Technician" and "Quality Assurance Microbiologist" at other employers. (ECF No. 41-1 at 27.) He earned a Bachelor of Science Degree from University of Wisconsin-Stevens Point in Biology and Chemistry and was the only candidate with a Bachelor of Science Degree. (*Id.*; ECF No. 42 ¶¶13, 30–31.) The VA also received a certification showing Fehler had passed a Universal Section Certification examination, indicating he was certified to handle refrigerants, as required for the position. (ECF No. 48 ¶1; ECF No. 49 ¶3; ECF No. 49-1.) Fehler was interviewed by a three-person panel composed of Adam Kreger, Scott Szemborski, and Allen Schubert. (ECF No. 42 ¶25.) The panel made a final recommendation to Linda Sue Schwartz, the Chief Engineer in Facility Management at the Clement J Zablocki VA Medical Center, and she selected Fehler. (*Id.* ¶¶25–26.)

Sandgren learned he had not been hired on February 9, 2022. (ECF No. 42 ¶12.) The following day, he contacted Alana Mueller, a VA Agency Human Resources Specialist, complaining that he thought he would be interviewed. (ECF No 41-1 at 29.) He told Mueller: "I was informed on 12-21-2021 that I was going to get a[n] interview but I was never got a call for a[n] interview so how can I be not selected[.]" (*Id.*) Mueller responded on February 12, 2022, explaining that the VA was "not required to interview for this position" and was permitted to "make a selection without an interview" because it had direct-hire authority for the position as part of the VA's COVID-19 response. (*Id.*) Sandgren then emailed Mueller, insisting that the policy violated the American with Disabilities Act (ADA) "requirements for special learning" and that the VA was required to give a "person two requirement[s] before turning a person down." (*Id.* at 30.) He also stated that the violations meant he could "get a lawyer and su[e the VA] for violating my rights[.]" (*Id.*) About two hours later, Sandgren emailed again, stating "I just remember something that happened with my learning disability I remember things later." (*Id.*) He then indicated that the VA had conducted interviews during the COVID-19 pandemic and accused it of racism and favoritism. (*Id.*)

Sandgren filed a complaint with the Equal Employment Opportunity Commission (EEOC) on March 15, 2026. (ECF No. 41-1 at 61.) As part of the EEOC investigation, Kreger submitted an affidavit, swearing that he did not know Sandgren had any disability and believed he was not qualified "based on the critical nature of the position" and his "lack of experience." (ECF No. 41-1 at 51–54.) The affidavit further confirms that the VA had screened Sandgren out prior to interviews. (*Id*. at 53.) In response to further EEOC questions, Kreger reiterated that he did not know Sandgren was disabled at the time of the hiring decision and in fact still did not know what disability Sandgren had. (*Id.* at 55.) He further stated that he did not know Sandgren's age, although he acknowledged being familiar with Sandgren from his other applications. (*Id.*)

Linda Sue Schwartz also submitted an affidavit to the EEOC, confirming she was not involved in the resume review or interviews and had not reviewed Sandgren's materials personally. (*Id.* at 45–48.) Schwartz confirmed she too did not know that Sandgren had a disability. (*Id.* at 48.) A later affidavit prepared to respond to another EEOC request represents that she remained unaware of Sandgren's age or disability. (*Id.* at 50.)

Mueller, the VA HR Specialist, also submitted affidavits in relation to the EEOC investigation, and in relation to this litigation. Mueller states she first met Sandgren on July 31, 2018, when he "wandered into a training" she was giving for VA employees. (ECF No. 50 ¶3.) Although he was not a VA employee, she allowed him to stay because "nothing presented was strictly limited to current employees." (*Id*. ¶4.) Mueller states that she had a conversation with Sandgren during this incident in which he indicated that he had a disability but that he never told her what it was and never presented any evidence to support his statement. (*Id*. ¶5.) In addition, Mueller states that it was her understanding, based on her training and guidance from the VA, that she could not share any information that she may have learned about an applicant's alleged disability with a hiring authority. (*Id.* ¶8 (citing The ABCs of SCHEDULE A Tips for Human Resource Professionals on Using the Schedule A Appointing Authority, EEOC, https://www.eeoc.gov/publications/abcs-schedule-tips-human-resource-professionals-using-schedule-appointing-authority (last visited Apr. 27, 2026) [hereinafter, The ABCs]).) Mueller was not involved in the interviews or the decision to hire Fehler.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The rules and procedures governing summary judgment apply to both represented and *pro se* parties. *See Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001). This Court's local rules recognize, however, that *pro se* litigants may be unfamiliar with their obligations at summary judgment. Accordingly, the Court has adopted safeguards to help ensure that unrepresented parties understand the basic summary judgment process.

When a represented party files a motion for summary judgment against a *pro se* litigant, Civil Local Rule 56(a)(1)(A) requires the moving party to include in their motion "a short and plain statement that any factual assertion in the movant's affidavit, declaration, or other admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented by counsel submits the party's own affidavit, declaration, or other admissible documentary evidence contradicting the factual assertion." Civil Local Rule 56(a)(1)(B) also requires the

moving party to include in their motion "the text to Fed. R. Civ. P. 56 (c), (d), and (e), Civil L. R. 56(a), Civil L. R. 56(b), and Civil L. R. 7," which describe the proper procedure and form for responding to a motion for summary judgment, as well as the consequences of failing to do so.

## ANALYSIS

Sandgren is proceeding on claims that the VA violated Section 504 and the ADEA when it did not interview and hire him for an open position. Defendant has moved for summary judgment. (ECF No. 39.) Consistent with Federal Rule of Civil Procedure 56 and Civil Local Rule 56, Defendant supported its motion with a brief and set of proposed undisputed facts along with citations to sworn declarations and authenticated exhibits. (ECF Nos. 40, 41, 42, 48, 49 & 50.) Defendant also complied with Civil Local Rules 56(a)(1)(A) & (B) by including the text of the applicable rules governing summary judgment procedure in its motion and by informing Sandgren that any factual assertions in Defendant's evidence would be accepted by the Court as true unless Sandgren submitted his own admissible evidence contradicting those factual assertions. (ECF No. 39 at 1–2.)

Sandgren has responded to Defendant's motion by filing several motions, but his response filings do not comply with his obligations under Rule 56 or Civil L.R. 56. (ECF Nos. 44, 45, 46, 52 & 53.) He has not filed a "concise response" to Defendant's proposed statement of undisputed facts or his own set of proposed undisputed facts supported by citations to affidavits, declarations or other admissible evidence, as required by Civil L.R. 56(b)(2). The closest Sandgren comes to responding to Defendant's factual submissions is a set of 21 pages from Defendant's filing that he has resubmitted with portions highlighted with the explanation that "[t]he U.S. Attorney Brian Pawlak submitted 214 pages of this disclosure I'm for now only using these 21 pages from it and 1 page from his answer to my file complaint for evidence to prove wrong doing I even highlighted them." (ECF No. 45-1 at 1.)

Sandgren's *pro se* status does not excuse him from having to follow procedural rules. *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("[P]ro se litigants are not entitled to a general dispensation from the rules of procedure."). Consistent with Civil L. R. 56(a), Defendant's filings notified Sandgren of his response obligations and the consequences if he failed to comply. (*See* ECF No. 39.) Because Defendant has complied, the Court will accept the VA's proposed factual statements as undisputed in analyzing the pending summary judgment motions. *See* Fed. R. Civ. P. 56(e)(2); Civil L. R. 56(a)(1)(A); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). This

does not necessarily mean the Court must grant Defendant's motion. Under Rule 56, Defendant still has the burden of showing "that summary judgment [is] proper given the undisputed facts" and with those facts construed in the light most favorable to the nonmovant. *Robinson*, 1 F.4th at 483 (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

In employment discrimination cases, the relevant question at summary judgment is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *McCurry v. Kenco Logistics Serv., LLC*, 942 F.3d 783, 788 (7th Cir. 2019); *Napier v. Orchard Sch. Found.*, 137 F.4th 884, 891–92 (7th Cir. 2025). Because Sandgren has not come forward with admissible evidence that the VA discriminated against him and Defendant has articulated a legitimate, non-discriminatory reason for the actions it took, no reasonable finder of fact could find in Sandgren's favor. Accordingly, Defendant's motion for summary judgment will be granted, and the case will be dismissed.

## I. Defendant Is Entitled to Summary Judgment on Sandgren's Section 504 Claim.

Sandgren's disability discrimination claim is governed by Section 504 of the Rehabilitation Act, codified at 29 U.S.C. §794. *See Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005); *see also Tyler v. Runyon*, 70 F.3d 458, 460 (7th Cir. 1995). Although the ADA does not apply to federal agencies, like the VA, *see Dyrek v. Garvey*, 334 F.3d 590, 597 n.3 (7th Cir. 2003) (citing 42 U.S.C. §12111(5)(B)), the same standards apply to claims under Section 504, *see id.* (citing 29 U.S.C. §794(d)). To state a claim for disability discrimination, Sandgren must show (1) he is disabled within the meaning of the statute; (2) he is qualified to perform the essential functions of the job either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *See Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A plaintiff is disabled if he has a physical or mental impairment that substantially limits one or more major life activities, he has a record of such an impairment, or he is regarded as having such an impairment. 42 U.S.C. §12102(1)–(3)(A). "To survive a motion for summary judgment, a plaintiff must present the court with evidence that, if believed by a trier of fact, would establish all three elements of his claim." *James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013) (citing *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011)). An

employer cannot be liable for disability discrimination if the employer had no knowledge of the plaintiff's alleged disability. *Spurling*, 739 F.3d at 1061 (citing 29 C.F.R. §1630.9).

Defendant is entitled to summary judgment on this claim for several reasons. As an initial matter, Sandgren has not come forward with admissible evidence that he is disabled within the meaning of Section 504. Sandgren does not identify his alleged disability, beyond alleging that he has a "severe learning disability" in his complaint. (ECF No. 1 at 3.) Nor has he pointed the Court to anything in the record that would identify this disability or be admissible in support of his allegation. This alone is sufficient to support an award of summary judgment in Defendant's favor. *See Celotex Corp.*, 477 U.S. at 325; *see also James*, 707 F.3d at 782.

Second, the admissible evidence confirms, and Sandgren has not rebutted, that whatever he believes his disability is, the relevant decisionmakers at the VA did not know about it. Defendants have introduced evidence, including sworn affidavits, confirming that the individuals involved in making the hiring decision were wholly unaware that Sandgren purported to have any type of disability. (ECF No. 41-1 at 50, 53–54.) Sandgren admits in his own filings that the actual decision makers did not know about his disability, but asserts in his response brief that Mueller, an HR Specialist, knew that he was disabled and had an affirmative duty to alert the hiring managers of his situation. (ECF No. 45 at 1.) Defendants have provided an affidavit from Mueller confirming that Sandgren told her that he had some disability but that she did not know what the disability was. (ECF No. 50 ¶5.) She also confirms that she did not share this information with the VA personnel responsible for making the decision not to interview Sandgren and who instead offered the position to Fehler. (*Id.* ¶8.) While Sandgren argues that Mueller should have affirmatively shared his disability within the VA, he cites no authority in support of this requirement. Defendant, on the other hand, provides guidance from the EEOC confirming that Mueller was prohibited from disclosing Sandgren's disability to others at the VA. (ECF No. 50 ¶¶5, 8); *see also* The ABCs, EEOC ("Remember, the hiring manager should not be involved in the disability documentation process. Proof of disability documentation, like other medical information, must be kept strictly confidential.") Sandgren's disability discrimination claim therefore fails on this basis too.

Third, Sandgren's disability discrimination claim fails because Defendant has produced evidence to show the VA's decision was non-discriminatory, and that it simply interviewed and hired an applicant whose qualifications it preferred. In his affidavit, Kreger states he chose not to

interview Sandgren "based on the critical nature of the position and lack of experience with the applicant." (ECF No. 41-1 at 53.) The successful applicant, Fehler, had relevant experience as a "Stationary/Boiler Engineer" at another hospital, a relevant Bachelor of Science Degree, years of experience in laboratory quality control settings, (ECF No. 42 ¶¶13–15), and the certificates necessary for the position, (ECF No. 48 ¶1; ECF No. 49-1). There is nothing in the record to suggest the VA's reason, preferring another candidate's qualifications, was pretextual.

Sandgren makes several arguments that are either refuted by the record or not relevant to his claim. Globally, Sandgren challenges, without evidence, the premise that this position was filled using the VA's direct hiring authority. (ECF No. 45 at 2.) But the job posting itself specifies that the position was being filled using the agency's direct hiring authority. (ECF No. 41-1 at 13.) Sandgren seizes on some supposed inconsistencies in the EEOC record, but his arguments show his own confusion about the use of the word hiring manager, and the respective roles of Kreger and Shwartz during hiring. Kreger and two other people conducted interviews and informed Schwartz, the Chief Engineer and official hiring manager, of their preference. Sandgren's misunderstanding of the VA's direct hiring authority is not a basis to deny Defendant's motion.

Sandgren also argues that direct hiring authority violates the Rehabilitation Act and ADA, because, he contends, those statutes require an employer to interview a person with a disability who "earns an interview." (ECF No. 45 at 1.) This argument again misunderstands the VA's direct hiring authority. By using its direct hiring authority, the VA was not required to interview every potentially qualified applicant for this position; it could select the candidates it found most qualified and interview them or even hire without conducting any interviews at all. *See* 5 C.F.R. §§337.201 & 337.202(a). Moreover, the communications Sandgren received do not support his position that he "earned an interview" or that the VA indicated it was going to interview him. (ECF No. 41-1 at 22–25.) Nor has Sandgren cited any authority for the proposition that the agency's direct hiring authority violates other federal law.

Sandgren's remaining arguments are even more far afield. He maintains that Defendant's decision to consider whether applicants had a college degree was improper because the job listing did not state that a degree was required. (ECF No. 45 at 2.) This argument has nothing to do with whether the VA discriminated against him because of his alleged disability. Sandgren further disputes whether Fehler held all the required certifications for the position, but Defendant has submitted the relevant certification, which it received with Fehler's application. (ECF No. 48 ¶1;

ECF No. 49-1.)  Sandgren, in a very late supplementary response, seizes on the date printed on the certification and asserts that it was submitted too late.  (ECF No. 53 at 2.)  The date in question appears to be when the certifying authority responded to the VA to confirm Fehler's certification.  (*See* ECF No. 49-1.)  Sandgren's smoking gun is nothing but a red herring.

In the end, Sandgren's disability discrimination claim fails for multiple reasons.  Sandgren has only offered an unspecified assertion (without admissible evidence) that he has a severe learning disability, has conceded that none of the relevant decisionmakers knew of his unspecified disability, and the VA has offered a legitimate reason to support its hiring decision.  The Court will therefore grant Defendant's motion for summary judgment.

## II.  Defendant Is Entitled to Summary Judgment on Sandgren's Age Discrimination Claim.

Sandgren's age discrimination claim arises under the ADEA.  This statute provides that "personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age."  *See* 29 U.S.C. §633a(a).  The Supreme Court has interpreted this to mean that the federal hiring process must be "untainted by any consideration of age," meaning that age must be the but-for cause of the alleged discriminatory treatment, but not necessarily the but-for cause of the ultimate employment decision.  *Babb v. Wilkie*, 589 U.S. 399, 402, & 405–08 (2020).  Nevertheless, to obtain most forms of relief, like hiring or compensatory damages, the plaintiff must still show that the age-discrimination was the but-for cause of the challenged employment decision.  *Id.* at 413–14.  A plaintiff may present direct evidence of discrimination, like a statement revealing an intent to discriminate on the basis of age, or circumstantial evidence, such as evidence of ambiguous statements, evidence that similarly situated individuals were treated differently, or some other evidence that suggests a proffered reason is pretextual.  *See Lawhead v. Ceridian Corp.*, 463 F. Supp. 2d 856, 863 (N.D. Ill. 2006) (citing *Walker v. Bd. of Regents of Univ. of Wis.*, 410 F.3d 387, 394 (7th Cir. 2005)).

Sandgren's age discrimination claim is tenuous because there is limited evidence that Defendant had any basis to know his age, let alone discriminate against him based on it.  Sandgren's resume did not include his age, and the individuals involved in reviewing his application have submitted sworn evidence that they were unaware of how old he was.  While Sandgren's resume indicates that he graduated high school in 1981, allowing the reasonable

inference that he was older when he applied for the VA position, he presents no direct evidence that the VA discriminated against him based on his age.

Sandgren argues that all three of the unsuccessful candidates were about sixty years old, while the successful candidate was in his early thirties. (ECF No. 45 at 3.) The resumes of the unsuccessful candidates were part of the record of Sandgren's EEO Complaint of Discrimination, and have been authenticated by Defendant. (ECF No. 41 ¶3(p)–(q); ECF No. 41-1 at 57–60.) The resume of one other unsuccessful applicant supports the conclusion that he was in his fifties or older. (ECF No. 41-1 at 57–58.) But this meager evidence is insufficient to support a finding that the VA discriminated in the hiring process. Even if one other unsuccessful applicant's resume indicates he was well over 40, this does not support an inference that his age or Sandgren's age was a factor in the hiring decision. Indeed, the Court cannot even infer with confidence what the other applicant's age was at the time. (S*ee id.* at 59–60.) In the end, the mere fact that a younger candidate with a significantly different background was hired cannot on its own support an inference of age discrimination. *See Lawhead*, 463 F.Supp.2d at 863 (noting that, to provide circumstantial evidence of discrimination, the other candidates must have been similarly situated) (citing *Greer v. Bd. of Educ. of City of Chi.*, 267 F.3d 723, 728 (7th Cir, 2001); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) (overruled in part on other grounds)).

In contrast to Sandgren's lack of evidence, Defendant has come forward with admissible evidence that the VA decided to interview and hire Fehler because it found him to be best qualified, irrespective of any candidate's age. Defendant's evidence that the VA considered Fehler's relevant bachelor's degree to be a positive qualification no other candidate had is unrefuted. (ECF No. 42 ¶¶13–18); *see Reynolds v. Tangherlini*, 737 F.3d 1093, 1105 (7th Cir. 2013) (crediting decisionmaker's explanation that experience in the field was not all that was considered when filling a position). The Court will not interfere with the VA's ability to choose between qualified candidates absent a demonstrably discriminatory motive. *Fishbach v. Dist. of Columbia Dept. of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

Because Sandgren has only offered unsupported speculation based on Fehler's estimated age, and Defendant has provided a legitimate reason why the VA chose Fehler, Defendant is entitled to summary judgment on this claim.

## III. Sandgren's Motions Will Be Denied.

In response to Defendant's summary judgment motion, Sandgren filed several motions. Sandgren first filed a "motion for immediate ruling to deny," asserting that Defendant's motion for summary judgment was filed untimely. (ECF No. 44.)  It was not; Defendant's motion was filed within the deadline set by the Court. (*See* ECF Nos. 36 & 39.)  Next, Sandgren filed a motion titled "request relief under Fed. R. Civ. P. 56(g)" in which he accused opposing counsel of delaying the proceedings and again contended that Defendant's motion for summary judgment was untimely. (ECF No. 46.)  There is no evidence of delay and Defendant's motion and supporting documents were filed on time.  Next, Sandgren filed a motion to dismiss Defendant's reply brief, arguing that the reply was filed untimely. (ECF No. 52.)  Under Civil Local Rule 56(3), Defendant had fourteen days to file a reply brief after Sandgren submitted his response brief on December 3, 2025.  Defendant's reply brief was timely filed on December 17, 2025. (ECF No. 47.)  Much later, on February 27, 2026, Sandgren filed a motion entitled "refresh request relief under Fed. R. Civ. P. 56(g) or 56(h)" reiterating the arguments described above, arguing that time was taken away from him because he is a *pro se* plaintiff, and arguing that defense counsel is trying to have the Court discriminate against him because of the way his filings are written. (ECF No. 53.)  This request is untimely and unsupported by any relevant authority.  These motions do not raise any arguments meriting relief.  The motions are also all moot because the Court will grant Defendant's motion for summary judgment, and Sandgren's claims will be dismissed with prejudice. (ECF Nos. 44, 46, 52, & 53.)

On April 11, 2026, Sandgren filed a motion entitled "Fine for Violating Rule 56 bad faith," arguing that opposing counsel impermissibly delayed this case by refusing to settle. (ECF No. 55 at 1.)  From what the Court can surmise from this document, Sandgren recently called opposing counsel, "tried to explain to [him] that he has no defense," and then filed this motion requesting the Court grant him $10,000.00. (*Id.*) Sandgren does not raise any actual allegations of improper conduct and does not explain why Defendant's refusal to settle with him would constitute bad faith or impermissible delay.  The Court will deny this motion.

On April 23, 2026, Sandgren filed a motion requesting a status conference.  The Court will deny this motion as moot, because Sandgren's case will be dismissed.

**CONCLUSION**

Accordingly, for the reasons discussed above, the Court will grant Defendant's motion for summary judgment. Sandgren's various motions will be denied and his claims will be dismissed with prejudice.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 39, is **GRANTED**. The clerk is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff's various motions, ECF No. 44, ECF No. 46, ECF No. 52, ECF No. 55, ECF No. 53, and ECF No. 56 are **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's motion requesting the Court fine Defendant, ECF No. 55, is **DENIED**.

Dated at Milwaukee, Wisconsin on April 28, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge